Alvin A. Behrend and Rose Behrend v. Commissioner. Maxwell A. Behrend and Nettie Behrend v. Commissioner.
Behrend v. Commissioner
Docket Nos. 82757, 82758.
United States Tax Court
T.C. Memo 1961-64; 1961 Tax Ct. Memo LEXIS 284; 20 T.C.M. (CCH) 327; T.C.M. (RIA) 61064; March 8, 1961
*284 Held, the fair market value of Class B preferred stock of Behrend Bros., Inc., when donated by petitioners to a charitable foundation, on September 15, 1954, and December 21, 1955, was $57 and $63 per share, respectively. Harold Leventhal, Esq., and Leonard N. Bebchick, Esq., for the petitioners. Joseph N. Ingolia, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: In these consolidated proceedings respondent determined deficiencies in income *285 tax for the calendar years 1954 and 1955, as follows: Petitioner
Dkt. No.
Year
Deficiency
Alvin A. and Rose Behrend
82757
1954
$3,592.19
Alvin A. and Rose Behrend
82757
1955
3,686.41
Maxwell A. and Nettie Behrend
82758
1954
3,686.13
Maxwell A. and Nettie Behrend
82758
1955
3,856.86
The only issue is whether the Class B preferred stock of Behrend Bros., Inc., had a fair market value on September 15, 1954, and December 21, 1955, when donated by petitioners to a charitable foundation and, if so, what that fair market value was on those respective dates. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioners Alvin A. and Rose Behrend are husband and wife and reside in Baltimore, Maryland. Petitioners Maxwell A. and Nettie Behrend are husband and wife and reside in Pikesville, Maryland. The joint returns of both couples for the years here involved were filed with the district director of internal revenue for the district of Maryland. Alvin and Maxwell are brothers. Behrend Bros., Inc. (hereinafter sometimes referred to as the corporation) was incorporated under the laws of the State *286 of Maryland on January 2, 1946, with an authorized capital stock of 3,000 shares, no par value. The corporation was the successor to a partnership organized in the year 1930 and conducted by the two brothers, Alvin and Maxwell. At the time of incorporation, 200 shares were issued to Alvin and 200 shares to Maxwell. Maxwell conveyed one-half of his shares to his wife Nettie on July 15, 1946. On December 19, 1952, the corporation amended its certificate of incorporation to provide that the entire authorized capital stock of the corporation shall amount to 13,000 shares and shall consist of four classes of stock as follows: Amount
Type
Par Value
5,000 shares
Class A Preferred $100
5,000 shares
Class B Preferred
100
1,500 shares
Class A Common
No par
1,500 shares
Class B Common
No par
The salient aspects of the four classes of stock regarding dividends, redemption of preferred, liquidation, and voting rights, are summarized thus: (1) Dividends. - Class A preferred is entitled to receive noncumulative dividends not exceeding 6 percent per annum when and as declared. Noncumulative dividends may be declared and paid on Class B preferred, not exceeding *287 6 percent per annum, only if and after dividends have been paid on Class A preferred. After all dividends are declared and paid on both classes of the preferred stock, holders of the outstanding Class A common and Class B common shall be entitled to receive dividends equally, share for share, as may from time to time be declared by the board of directors. (2) Redemption of Preferred Stock. - At the option of the board of directors, the whole or any part of Class A preferred or Class B preferred may, upon not less than 30 days' notice, be redeemed at $100 per share, plus any accumulated and unpaid dividends. (3) Liquidation. - In the event of liquidation, the holders of Class A preferred and Class B preferred are entitled to receive $100 per share prior to any distribution to the common stockholders. (4) Voting Rights. - The preferred stock is nonvoting; the common stock is voting with Class A stock electing Class A directors and Class B stock electing Class B directors. On December 23, 1952, the corporation issued to Alvin 1,000 shares of Class A preferred and 1,000 shares of Class B preferred; to Maxwell 500 shares of Class A preferred and 500 shares of Class B preferred; *288 and to Nettie 500 shares of Class A preferred and 500 shares of Class B preferred. At the same time, the corporation retired the then issued and outstanding 400 shares of its originally authorized capital stock and reissued in place thereof 200 shares of Class A common to Alvin; 100 shares of Class B common to Maxwell; and 100 shares of Class B common to Nettie. Behrend Bros., Inc., is a closely held corporation. All of its issued stock is held by members of the Behrend family or by a trust created for the benefit of members of that family and the Behrend Foundation Company, Inc., hereinafter mentioned. The corporation is operated by the two brothers, Alvin and Maxwell. There have been no sales of any corporate stock, preferred or common. The corporation at all times material herein was the owner and beneficiary of two insurance policies on the lives of its officers, Alvin and Maxwell. The policies provided for payment of $300,000 on the death of each of the officers. Alvin was born in October 1904; Maxwell in February 1908. Prior to December 31, 1955, dividends were declared on Class A preferred stock of the corporation but not on any of the other classes of stock. The corporation *289 was, during the years 1954 and 1955, and still is engaged in the business of operating an automobile sales and service agency, being a franchised Ford dealer. The corporation carried both its no-par common and $100 par preferred stocks on its books at a value of $100 per share. On December 31, 1954, and December 31, 1955, the corporation had an earned surplus of $144,403.94 and $228,236.14, respectively, or a net worth of $584,403.94 and $668,236.14, respectively, made up of the following: Item
12/31/54
12/31/55
Class A common stock
$ 20,000.00
$ 20,000.00
Class B common stock
20,000.00
20,000.00
Class A preferred stock
200,000.00
200,000.00
Class B preferred stock
200,000.00
200,000.00
Surplus
144,403.94
228,236.14
Net Worth
$584,403.94
$668,236.14
The corporation's earnings, after income taxes, for the years 1951 to 1955, inclusive, are as follows: 1951
$ 55,356.00
1952
43,453.00
1953
44,017.00
1954
15,556.00
1955
96,925.00
Total
$255,307.00
On February 23, 1954, petitioners formed a nonprofit charitable foundation known as the Behrend Foundation, Inc. The United States Treasury Department, by letter of November 14, 1955, and *290 signed by the Chief, Pensions and Exempt Organizations Branch, ruled the foundation entitled to an exemption under section 501(c)(3) of the Internal Revenue Code of 1954, as it was "organized and operated exclusively for religious, charitable and educational purposes." This letter has never been modified or revoked. On September 15, 1954, and again on December 21, 1955, Alvin and Maxwell each donated 75 shares of the corporation's Class B preferred stock to the Behrend Foundation, Inc. At the time these donations were made, it was the intention and expectation of petitioners, as managers of the corporation, that the corporation would begin to redeem all of the donated stock as quickly as earnings permitted, and that this would occur late in 1957 or 1958 or earlier if either Alvin or Maxwell should die and the $300,000 of insurance was paid to the corporation. It was also their intention that the corporation should accumulate a net worth of about $750,000 before it should consider itself in a financial position to begin to redeem or to pay dividends on the Class B preferred stock. This was due to the possibility that the corporation would have to relocate *291 its business and purchase between 5 and 7 acres of land in a downtown location if a contemplated expressway, which would pass directly in front of the corporation's business property, materialized. The construction of the expressway became a reality shortly after February 11, 1955. In 1954 and 1955 loans were made to the foundation by the Western National Bank of Baltimore on notes endorsed personally by Alvin and Maxwell, the officers of the foundation, as follows: Type
Date
Amount
Demand loan
Oct. 5, 1954
$ 3,000.00
Demand loan
Jan. 10, 1955
5,000.00
Time loan
Dec. 28, 1955
10,000.00
Alvin and Maxwell, as officers of the foundation, regarded it as appropriate for the foundation to borrow the sum of $18,000 in 1954 and 1955 on their personal endorsement as they intended to redeem the Class B preferred stock held by the foundation, as previously stated herein, and thus discharge the bank obligations with the funds which the foundation would realize from the redemption of the donated stock. In its 1957 and 1958 returns the corporation reported net losses of $65,174.44 and $90,616.74, respectively. In 1959 the corporation declared a dividend on the *292 outstanding Class B preferred stock, which was paid in January 1960. In joint returns for 1954 and 1955 petitioners deducted the sum of $7,500 on each return as a charitable contribution by reason of the above-mentioned donations of the Class B preferred stock to the Behrend Foundation, Inc. In his notice of deficiency dated June 12, 1959, the respondent determined that petitioners failed to establish that the aforementioned donated Class B preferred stock had a fair market value as of the date donated. He therefore disallowed in full the separate deductions of the $7,500 taken in 1954 and 1955 by petitioners in their respective joint income tax returns. The book value of the corporation's Class B preferred stock as of December 31, 1954, and December 31, 1955, was $100 per share. The fair market value of the corporation's Class B preferred stock on September 15, 1954, and December 21, 1955, was $57 and $63, respectively. Opinion Petitioners claimed the deductions here in question under section 170 of the Internal Revenue Code of 1954, which provides, subject to certain limitations not at issue, that "There shall be allowed as a deduction any charitable *293 contribution * * * payment of which is made within the taxable year." Section 1.170-1 of the respondent's regulations under the Code (T.D. 6285, filed March 13, 1958) provides: (c) Contribution in property. If a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. * * * The respondent disallowed the claimed deductions and in a statement, attached to the deficiency notice, to Alvin and Rose for the year 1954, said: "Since you have failed to establish that this stock had a fair market value as of the date donated, the claimed deduction of $7,500.00 is disallowed in full." Identical explanations were given for the disallowance of the three remaining donations of 75 shares each. We are satisfied from all the evidence that the corporation's Class B preferred stock had a fair market value on September 15, 1954, and December 21, 1955, and have *294 found as a fact that such fair market value on those dates was $57 and $63, respectively. In making this finding we have carefully considered all of the evidence, both documentary and oral. It would serve no useful purpose to discuss in detail the many arguments and theories advanced by both sides on this purely fact-finding question. Both parties agree that the book value of the stock on the critical dates was $100 per share and at all times here material there were sufficient net assets to redeem both classes of preferred stock at par. At the time the donations were made, it was the intention of the officers of the corporation that the Class B preferred stock would be redeemed in 1957 or 1958, or earlier in case of the death of Alvin or Maxwell. No dividends could be paid on the common stock until dividends were first declared and paid on the preferred stock so there was always a possibility that a dividend or dividends might be declared and paid on the Class B preferred. Taking into consideration all of the facts and circumstances, including the testimony of the expert witnesses on both sides, we find the fair market value of the Class B preferred stock on the critical dates *295 to be the values as set out in our findings. It is so held. Decision will be entered under Rule 50.